James W. MAGERS, Appellant,

v.

Janice D. MAGERS, Appellee.

No. 57163.

Court of Appeals of Oklahoma,
Division No. 1.

Feb. 2, 1982.

Rehearing Denied March 23, 1982.

Certiorari Denied May 18, 1982.

Released for Publication by Order of
Court of Appeals May 27, 1982.

Shockley T. Shoemake, Pawhuska, for appellant.

Kelly & Gambill by Bruce W. Gambill, Pawhuska, for appellee.

REYNOLDS, Judge:

The District Court of Osage County acquired emergency jurisdiction in this case for the protection of the son and daughter of James Mager and Janice Mager, now Durham.

The son visited his father in Oklahoma in July, 1980 and revealed information which, if believed, could indicate that the child had been physically and sexually abused by Janice's live-in boyfriend. Janice, a Texas resident, received notice of the assumption of jurisdiction by the Oklahoma court when she was served with copies of James' petition and a temporary custody order granted him.

James and Janice had been divorced in Wichita County, Texas in June, 1980. Janice and her boyfriend married in late August, two days after she received notice of the Oklahoma proceedings. She entered her appearance in the Oklahoma court in early September. The very next day she appeared before a Texas grand jury and caused a felony warrant to be issued for James' arrest by alleging that he had wrongfully refused to surrender the children to her. Further, in mid-November, Janice filed in Texas for a writ of habeas corpus, for contempt, for termination of James' parental rights or the limitation of his visitation rights, and for attorney's fees.

Meanwhile, in late November, the Oklahoma court held a partial hearing on the abuse allegations. The Texas court held a hearing on the contempt charges against James in early December. James, still subject to arrest on the grand jury warrant, prudently declined to travel to Texas for the hearing. The Texas court adjudged James to be in contempt and sentenced him, *in abstentia*, to six months in the county jail. The Oklahoma court wrote to the Texas court in late January and formally advised it of the pending Oklahoma proceedings. The Texas court never responded.

The Oklahoma court resumed its hearing on the abuse allegations in late February, and entered a statement of facts in late June. The Oklahoma court determined that the overwhelming majority of the witnesses who could testify as to the alleged abuse were in Texas. Thus, Texas was the most convenient forum for this action.

James was granted temporary custody of the children, given ten days to file a statement of intent to petition the Texas court, and granted twenty days following the ten day period to actually file a petition. If James failed to file in Texas, custody of the children was to revert to Janice.

During the pendency of this appeal, Janice petitioned the Texas court to stay the warrants for James' arrest. The District Court of Wichita County, Texas, stayed the grand jury and contempt warrants in October, 1981, and James was then free to return to Texas.

James appealed from the findings of the Oklahoma court, alleging error in the referring of the case to Texas, and the failure of the court to make a ruling on the merits.

The Texas court acquired continuing jurisdiction over the children under Texas' statutes (V.T.C.A., Family Code, § 11.05) when it awarded custody of the children to Janice in the June, 1980 divorce.

■ The Oklahoma court is empowered to assume jurisdiction where an emergency exists and a child may be endangered. 10 O.S.Supp.1980, § 1605(A)(3)(b). Further, the district court has the duty to take evidence on the issue of abuse to determine whether it should assume emergency jurisdiction. *Holt v. District Court, etc.,* 626 P.2d 1336 (Okl.1980).

■ James alleges that the district court erred in giving retrospective effect to the Uniform Child Custody Jurisdiction Act (UCCJA), 10 O.S.Supp.1980, § 1601, *et seq.*, which became effective October 1, 1980.

■ The retrospective application of a procedural statute is proper. The Supreme Court of Oklahoma stated in *Shelby-Downard Asphalt Co. v. Enyart,* 67 Okl. 237, 170 P. 708 (1918):

No one has a vested right in any particular mode of procedure for the enforcement or defense of his rights. Hence the general rule that statutes will be construed to be prospective only does not apply to statutes affecting procedure; but such statutes, unless the contrary intention is clearly expressed or implied, apply to all actions falling within their terms, whether the right of action existed before or accrued after the enactment. Further, the UCCJA, 10 O.S.Supp., § 1603 states:

> The provisions of this act shall apply to *all* custody proceedings brought within this state, whether as an initial proceeding or modification, and regardless of the absence of jurisdictional dispute. [Emphasis added.]

The UCCJA enumerates the specific instance when a court shall assume jurisdiction. 10 O.S.Supp.1980, § 1605.

After determining that it has jurisdiction, the court must then decide whether to exercise jurisdiction. *Smith v. Smith*, 40 Or. App. 257, 594 P.2d 1292 (1979). This multistep approach was specifically adopted by the Supreme Court of Oklahoma in *Holt, supra*, at 1341. The policy considerations which the court must take into account when deciding whether to exercise jurisdiction are clearly stated in 10 O.S.Supp.1980, § 1609.

The court may decline to exercise its jurisdiction if it finds that it is an inconvenient forum. 10 O.S.Supp.1980, § 1609(A). Further, 10 O.S.Supp.1980, § 1609(E) states:

> If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or *it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state* or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum. [Emphasis added.]

In determining when it is an inconvenient forum, the court may take into account such factors as: whether another state is or was recently the child's home state; whether another state has a closer connection with the child and the family or with the child and the contestants; whether substantial evidence concerning the child's current or future care, protection, training and relationships is more readily available in another state; whether the parties have agreed that another forum is no less appropriate; and whether the exercise of jurisdiction by a court of this state will contravene any of the general purposes of the UCCJA. 10 O.S.Supp.1980, § 1609(C).

The general purposes of the UCCJA, stated in 10 O.S.Supp.1980, § 1602, are [to]:

1. Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

2. Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

3. Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where the significant evidence concerning his care, protection, training and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

4. Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

5. Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

6. Avoid relitigation of custody decisions of other states in this state insofar as feasible;

7. Facilitate the enforcement of custody decrees of other states;

8. Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

9. Make uniform the law of those states which enact it.

The limitation upon the exercise of jurisdiction is succinctly stated at 10 O.S.Supp.1980, § 1616 wherein the courts of Oklahoma are advised:

A. If a court of another state has made a custody decree, a court of this state *shall not* modify that decree unless:

1. It appears to the court of this state that the court which rendered the decree does not now have jurisdictional prerequisites substantially in accordance with this act or has declined to assume jurisdiction to modify the decree; and

2. The court of this state has jurisdiction. [Emphasis added.]

A review of the Texas Family Code, V.T.C.A., Family Code, § 11.04, *et seq.*, reveals that the jurisdictional prerequisites of Texas are substantially in accord with the UCCJA. In fact, the Texas courts may adopt the principles of the UCCJA to the extent that they are consistent with Texas decisions. *Perry v. Ponder*, 604 S.W.2d 306 (Tex.Civ.App.1980); V.T.C.A., Family Code, §§ 11.045, 11.051, 11.053. The Texas courts have not declined jurisdiction in this case.

 Most of the alleged instances of abuse occurred in Texas. As the Colorado Court so aptly stated in *Roberts v. District Court of Larimer County*, 596 P.2d 65, 68 (1979), (cited in *Holt, supra*, at 1346, n. 47):

[The] purposes of the UCCJA are not to be emasculated by a provincial or limited view of the spirit or purpose of the act. The courts of the home state of the child are equally well suited to remedy the ills which result from alleged parental abuse or neglect. More harm than good arises if the courts of this state allow parents to disregard the decrees of courts in our sister states, absent a grave emergency situation. Thus, the jurisdictional parameters of the UCCJA should be followed unless the best interest of the child, as shown by substantial evidence, clearly mandate contravention thereof.

The order of the District Court of Osage County, Oklahoma, granting James temporary custody of the children and directing him to pursue this case in the Texas forum is affirmed. The ten day period during which James shall file an intent to petition the Texas court shall begin to run on the day following the date of the mandate of this opinion.

AFFIRMED.

WILSON, P. J., and BOX, J., concur.